Fidel HERNANDEZ, et al., Plaintiffs,

v.

EVER FRESH COMPANY and L2K
Farms, Inc., Defendants.

Civil No. 95–622–FR.

United States District Court,
D. Oregon.

May 3, 1996.

Leslea S. Smith, Oregon Legal Services Corporation, Oregon City, Oregon, D. Michael Dale, Oregon Legal Services Corporation, Portland, Oregon, for Plaintiffs.

Don K. Lloyd, Laura J. Walker, Cable Huston Benedict & Haagensen, Portland, Oregon, for Defendants.

## OPINION

FRYE, District Judge:

The matters before the court are:

(1) the defendants' motion for summary judgment (# 29);

(2) the plaintiffs' motion for partial summary judgment (# 34);

(3) the defendants' motion to strike the declaration of Charlie Harris (# 47); and

(4) the defendants' motion to strike the declaration of Maria Mottaghian (# 53).

## UNDISPUTED FACTS

The plaintiffs, Fidel Hernandez, Javier Hernandez, Aurelia Hernandez, Pedro Villegas, Kevin Villegas, William Villegas and Juana Villegas, are migrant farm workers. The Hernandez family has one child, and the Villegas family has two children. The plaintiffs are residents of Fresno, California. The defendants, Ever Fresh Company (Ever Fresh) and L2K Farms, Inc. (L2K Farms), are corporations which operate from the same office in Multnomah County, Oregon, with identical boards of directors. Ever Fresh processes fruit. L2K Farms grows strawberries and caneberries which are processed by Ever Fresh. Both Ever Fresh and L2K Farms provide housing for 80 to 100 seasonal workers. Housing for the seasonal workers is located near the berry fields.

In early May of 1993, the Hernandez family and the Villegas family came to the State of Oregon from Fresno, California to work in the berry harvest. On or about May 20, 1993, Fidel Hernandez and Pedro Villegas went to the office of Ever Fresh and L2K Farms to inquire about work and housing. Pedro Villegas spoke on behalf of both families. Representatives of L2K Farms advised Pedro Villegas that there was no housing provided by Ever Fresh and L2K Farms for migrant workers with children under the age of 12 years.

Although the Hernandez and the Villegas families continued to search for work with available housing for families with children under the age of 12 years, they could not find such work. The Hernandez parents subsequently took their children back to Fresno, California and thereafter returned to the State of Oregon. They obtained employment in the berry harvest. The Villegas family received a voucher from a social services agency of the State of Oregon which allowed them to stay in a motel in the State of Oregon with their children. While they were staying in the motel, Pedro and Juana Villegas were hired by L2K Farms.

The plaintiffs allege two claims against the defendants: (1) for discrimination on the basis of familial status in violation of the Fair Housing Act of 1988, 42 U.S.C. § 3601, *et seq.*, for refusing to rent to them because they have children under the age of 12 years; and (2) for discrimination in violation of 42 U.S.C. § 3604 by making or causing to be made a statement that indicated a preference, limitation or discrimination based on familial status.

## CONTENTIONS OF THE PARTIES

The defendants move for summary judgment on the following grounds: (1) that the Fair Housing Act does not apply to a temporary farm labor camp because a temporary farm labor camp is not a "residence" or a "dwelling;" (2) that the Fair Housing Act does not require the defendants to provide housing for the non-working family members of farm laborers; and (3) that agricultural

employers are not subject to those provisions of the Fair Housing Act which prohibit discrimination on the basis of familial status. The defendants argue that the plaintiffs do not state a claim for relief against Ever Fresh under the Fair Housing Act because none of the plaintiffs ever applied for work with or were ever employed by Ever Fresh in 1993. The defendants also argue that the Hernandez plaintiffs do not state a claim for relief against L2K Farms because they do not allege that they applied for work with L2K Farms.

The plaintiffs argue that they are entitled to partial summary judgment on the following grounds: (1) that the prohibition in the Fair Housing Act against discrimination on the basis of familial status applies to the labor camp owned by the defendants; (2) that the policy of the defendants not to provide housing in the labor camp for families with small children violates the Fair Housing Act; (3) that if the plaintiffs had sought housing at the defendants' labor camp on or about May 24, 1993, the defendants would have violated the Fair Housing Act by refusing them housing; and (4) that the defendants violated the Fair Housing Act by refusing the plaintiffs housing in 1993.

## APPLICABLE LAW

■ Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine

issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

■ Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summary judgment is not appropriate.

## ANALYSIS AND RULING

1. *The Motion of the Defendants for Summary Judgment*

A. *The Fair Housing Act*

The threshold question in this case is whether the Fair Housing Act applies to the farm worker housing provided by the defendants. The Fair Housing Act (FHA) prohibits discrimination in housing on the basis of familial status. 42 U.S.C. § 3601, *et seq.* The FHA makes it unlawful to "refuse to ... rent ... or otherwise make unavailable or deny, a dwelling to any person because of ... familial status...." 42 U.S.C. § 3604(a). The FHA also prohibits statements "with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on ... familial status ... or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).

■ The plaintiffs argue that the temporary housing that they were provided as farm workers should be considered dwellings. The defendants argue that the temporary housing that they provided to the plaintiffs should not be considered dwellings. The FHA defines a dwelling as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families...." 42 U.S.C. § 3602(b).

Unfortunately, the FHA does not include a definition for the word "residence." The United States Court of Appeals for the Ninth Circuit has not defined the word "residence" for purposes of the FHA. The case often cited by courts interpreting a "residence" under the FHA is *United States v. Hughes Memorial Home*, 396 F.Supp. 544, 549 (W.D.Va.1975). *See, e.g., United States v. Columbus Country Club*, 915 F.2d 877 (3rd Cir.1990), *cert. denied*, 501 U.S. 1205, 111 S.Ct. 2797, 115 L.Ed.2d 971 (1991); *Woods v. Foster*, 884 F.Supp. 1169 (N.D.Ill.1995). The court in *Hughes Memorial Home* defined a "residence" as "a temporary or permanent dwelling place, abode or habitation to which one intends to return as distinguished from the place of temporary sojourn or transient visit." 396 F.Supp. at 549 (quoting *Webster's Third New International Dictionary* ). A central inquiry here is whether the farm worker housing was occupied by the plaintiffs as their residences, and whether they in fact resided in the farm worker housing for a period of time longer than a sojourn or visit.

Courts have applied the FHA to group homes for recovering drug addicts and alcoholics, *City of Edmonds v. Oxford House, Inc.*, —— U.S. ——, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995); homeless shelters, *Turning Point v. City of Caldwell*, 74 F.3d 941 (9th Cir.1996); seasonal bungalows, *Columbus Country Club, supra;* shelters for homeless and battered women and their families, *Woods, supra;* and hospice facilities for AIDS patients, *Baxter v. City of Belleville*, 720 F.Supp. 720 (S.D.Ill.1989). A motel was held not to be a dwelling for purposes of the FHA because it was not occupied as a residence, but as lodging for transient guests. *Patel v. Holley House Motels*, 483 F.Supp. 374 (S.D.Ala.1979).

The defendants contend that the temporary farm worker housing supplied by them cannot be deemed dwellings because (1) this housing is only available for farm workers who work in the harvest from May to October of each year; and (2) the plaintiffs who stay in this housing have residences elsewhere to which they will return. The plaintiffs contend that the temporary farm worker housing should be deemed dwellings because

it serves as their homes for the period of their seasonal employment with the defendants, and they are not transients.

The defendants cite *Farmer v. Employment Sec. Comm'n*, 4 F.3d 1274 (4th Cir. 1993), in support of their argument that the temporary farm worker housing supplied by them cannot be deemed dwellings. In *Farmer*, the court was asked to decide whether the FHA, which prohibits discrimination against families in housing, controls over the Immigration Reform and Control Act of 1986, which requires family housing to be provided by H–2A employers only when it is the prevailing practice in the area and in the occupation of intended employment. The court ruled that when the provisions of the Immigration Reform and Control Act, which regulates family housing requirements for H–2A employers, is in conflict with the FHA, which is a more general statute, then the specific provisions of the Immigration Reform and Control Act applies. However, *Farmer* is distinguishable from the case before this court because, in *Farmer*, the court addressed the issue of discrimination in housing with respect to a specific, highly regulated group known as H–2A employers. In *Farmer*, the court had to reconcile two conflicting statutes. Here, neither Ever Fresh nor L2K Farms are H–2A employers. The only statute relevant to discrimination in housing which is applicable to the defendants is the FHA.

In a recent opinion in a parallel case, the Honorable Malcolm F. Marsh, United States District Judge, held that "the [temporary housing is] far more than mere places of temporary sojourn or transient visit. Like the occupants of a homeless shelter, during the farmworkers' employment by defendant, the [temporary housing is] their homes." *Villegas v. Sandy Farms, Inc.*, —— F.Supp. —— [1996 WL 338823] (D.Or.1996). This court finds that the FHA is applicable to a temporary farm labor camp, such as the camp owned by Ever Fresh and L2K Farms, because the camp serves as the dwelling of the employees for the duration of their em-

ployment with Ever Fresh and/or L2K Farms.

### B. *The Plaintiffs' Claims Against Ever Fresh*

■ The defendants contend that the plaintiffs cannot state a claim against Ever Fresh because the plaintiffs did not apply for work with Ever Fresh and were not employed by Ever Fresh. The plaintiffs argue that Ever Fresh should be liable in this case as a joint venturer with L2K Farms, or in the alternative as an agent of L2K Farms.

The following facts guide the court in its determination: the land and the temporary housing is leased by L2K Farms; the permit to operate the temporary housing is held by L2K Farms; the employee by whom Pedro Villegas was told that housing was unavailable for the families was an employee of L2K Farms; an employee of L2K Farms managed the temporary housing; and the workers housed in the temporary housing worked almost exclusively for L2K Farms, with the exception of workers who could not pick berries due to weather conditions and Ever Fresh had need for additional employees at that time. The involvement of Ever Fresh in the allocation and use of temporary housing for farm workers was limited to the distribution and receipt of applications for housing by employees who worked both for Ever Fresh and for L2K Farms.

Although the defendant corporations have employees who work for both of the corporations and although the defendant corporations have identical boards of directors, the court finds no ground here to pierce the corporate veil. Furthermore, the court finds that Ever Fresh and L2K Farms did not operate as joint venturers or as agent and principal. The court will not hold Ever Fresh liable for any acts of L2K Farms.

### C. *Standing of the Hernandez Family*

The defendants contend that because the Hernandez family was not employed by L2K Farms and did not apply for work with L2K Farms, they lack standing to sue L2K Farms for discrimination in housing.

■ A litigant has standing under the FHA if that person has suffered a distinct and palpable injury as a result of the actions of the defendants. *Havens Realty Corp. v.*

*Coleman,* 455 U.S. 363, 372, 102 S.Ct. 1114, 1120–21, 71 L.Ed.2d 214 (1982). The injury need not be direct, but must be "fairly traceable" to the defendants' acts or omissions. *Id.* at 373–76, 102 S.Ct. at 1122–23 (quoting *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977)).

■ It is undisputed that Fidel Hernandez and Pedro Villegas went together to L2K Farms to inquire about work and housing. Pedro Villegas was told by L2K Farms that neither the Hernandez family nor the Villegas family could obtain housing at L2K Farms because they had children under the age of 12 years. Fidel Hernandez was injured by the refusal of L2K Farms to provide housing for him and his family. Accordingly, Hernandez has standing and may join in a claim against L2K Farms under the FHA.

The defendants' motion for summary judgment is granted as to Ever Fresh and denied as to LK2 Farms.

### 2. *The Motion of the Plaintiffs for Partial Summary Judgment*

■ The plaintiffs move the court for partial summary judgment on the following issues: (1) the prohibition of the FHA against discrimination on the basis of familial status applies to the labor camp owned and operated by the defendants; (2) the policy of the defendants not to provide housing in the labor camp to families with children under the age of 12 years violates the FHA; (3) if the plaintiffs had sought housing at the defendants' labor camp on or about May 24, 1993, the defendants would have violated the FHA by refusing the plaintiffs housing; and (4) that the defendants violated the FHA by refusing the plaintiffs housing.

The court has concluded that the prohibition of the FHA against discrimination on the basis of familial status applies to the labor camp owned and operated by L2K Farms.

■ The court has concluded that Ever Fresh is entitled to summary judgment in its favor. At oral argument, L2K Farms asserted that in the event that the court dismissed

the claims against Ever Fresh, the claims of the plaintiffs against L2K Farms must be dismissed because the statute of limitations had run prior to L2K Farms being added as a defendant in the case. This issue must be resolved prior to any determination by this court that L2K Farms is liable to the plaintiffs under the claims brought in this case.

## CONCLUSION

The court finds as follows:

(1) the defendants' motion for summary judgment (# 29) is granted as to Ever Fresh and denied as to L2K Farms;

(2) the plaintiffs' motion for partial summary judgment (# 34) is granted as to issue # 1 and denied as to issues # 2, # 3 and # 4;

(3) the defendants' motion to strike the declaration of Charlie Harris (# 47) is denied; and

(4) the defendants' motion to strike the declaration of Maria Mottaghian (# 53) is denied.